IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------ :
                                               : CASE NO.  1:08 CR 510
UNITED STATES OF AMERICA,        :
                                               :
                               Plaintiff, : <u>MEMORANDUM OF OPINION AND</u>
                                               : <u>ORDER DENYING DEFENDANT'S</u>
                         -vs-                       : <u>MOTION TO RECONSIDER</u>
                                               :
                                               :
MARK SCHIMLEY,                     :
                                   Defendant. :
------------------------------------------------------

UNITED STATES DISTRICT JUDGE LESLEY WELLS

      Before the Court is defendant Mark Schimley's motion to reconsider the Court's 25 September 2009 order denying his motion to suppress and his request for a <u>Franks</u> hearing.  (Docket No. 30).  Mr. Schimley asks the Court to reconsider its ruling because the government's brief in opposition raised issues of fact that were unknown to him at the time he filed his original motion.  (Docket No. 30).  The defendant, who is charged with possession and distribution of child pornography, specifically requests an evidentiary hearing wherein he might cross-examine the investigator in this case regarding the computer software used to collect evidence for a search warrant.  (Docket No. 30).  The government argues that the motion should be denied, because any new issue of fact that may have been raised by its original opposition fails to meet the standard set out in <u>Franks v. Delaware</u>.  (Docket No. 31).  For the reasons that follow, the Court will deny Mr. Schimley's motion.

**I. Background**

Mr. Schimley's two count indictment for violations of 18 U.S.C. § 2252 arose from Pennsylvania State Trooper Robert Erdely's investigation of the distribution of child pornographic images and movies through peer-to-peer file sharing networks.  (Docket 24 at 1-3).  The warrant executed on Mr. Schimley's home on 6 March 2007 was supported by the affidavit of Special Agent Joseph M. Russ, which was based almost entirely on the investigations of Trooper Erdely.  (Docket 24 at 1).

*The Warrant Affidavit*

The warrant affidavit indicates that on 13 February 2007 through the use of an internet connected computer and software called Phex, Trooper Erdely conducted a search for child pornography using the keyword phrase "[Loli Child Porn] (Loli Y) Babj00(New) by Kidzilla.avi," on a peer-to-peer file sharing network.  (Docket No. 23-2, ¶24).  According to the affidavit, this search revealed 3929 files for download originating from a network user associated with the IP address 24.166.103.205 ("IP address 205").  (Docket No 23-2, ¶23).  Among these files, Trooper Erdely was allegedly able to identify sixty movie and image files that contained names relating to child pornography, based on his previous experience in other investigations.  (Docket No. 23-2, ¶23).  Trooper

2

Erdely downloaded one file from IP address 205, which depicted child pornographic images. (Docket No. 23-2, ¶23). The affidavit described the video as follows:

> [Loli Child Porn] (Loli Y) Babj 00(New) by Kidzilla.avi (video file of nude pre-pubescent female, with no pubic hair, stripping. An adult male is then seen penetrating the vagina of the prepubescent on multiple occasion [sic] during the twenty one minute (21 min) video clip. The prepubescent female is also seen using an oversized sharpie marker to penetrate her vagina).

(Docket No. 23-2, ¶23(a)).

According to the affidavit, because Phex captures and logs incoming data, Trooper Erdely was able to verify that the downloaded file was transferred directly from the IP address 205. (Docket No. 23-2, ¶24). The trooper matched the SHA-1 hash value[1] to confirm that the downloaded file and the shared file were one and the same. (Docket No. 23-2, ¶24). The affidavit states that Trooper Erdely also matched the SHA-1 hash values of fifty-nine other files being shared at IP address 205 with video and image files previously identified as child pornography. (Docket No. 23-2, ¶25). Based on these findings, an administrative subpoena was issued to the internet service provider, which revealed that at the date and time Trooper Erdely took the above actions, IP address 205 was assigned to an account registered to Mark Schimley, 1225 North Road, Apt. 110, Niles, Ohio 44446. (Docket No. 23-2, ¶26).

Based on this affidavit and an application submitted by Agent Russ, Magistrate Judge Limbert granted the search warrant. (Docket No. 23 at 3). Agents searched Mr. Schimley's residence and seized his computer, which allegedly contained child

---

[1] An "SHA-1 Hash Value" is a mathematical algorithm used to create digital signatures. Among computer forensics professionals, the SHA-1 hash value is generally considered to be a unique signature or fingerprint for a file. (Docket 23-2, ¶6(l)).

3

pornographic images and movies. (Docket No. 23 at 3). Mr. Schimley was subsequently indicted under two counts: (1) knowingly receiving and distributing files containing visual depictions of real minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2), and (2) knowingly possessing a computer and CD-ROM/DVD that contained child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (Docket No. 1).

On 29 July 2009, Mr. Schimley filed a motion to suppress and requested a Franks hearing. (Docket No. 23). In that motion, Mr. Schimley argued that because the warrant affidavit contained material false statements, made knowingly and deliberately, or with reckless disregard for the truth, he was entitled to evidentiary hearing pursuant to Franks v. Delaware. (Docket No. 23 at 8-11). It was in fact revealed, and the government conceded, that the warrant affidavit included two false statements,[2] as Mr. Schimley's hard drive did not contain a file by the name of "[Loli Child Porn] (Loli Y) Babj 00(New) by Kidzilla.avi," as the affidavit had specified.[3] (Docket No. 23 at 3-4).

The government explained this discrepancy as a consequence of the Phex program's functionality. According to the government,

> [Trooper Erdely] maintains a text file which contains the names and hash values of known child pornography images recovered from other investigations. When

---

[2] The government concedes that the following two statements in the affidavit are false: "Trooper Robert Erdely conducted a keyword search for child pornography on Phex using the keyword "[Loli Child Porn] (Loli Y) Babj 00(New) by Kidzilla.avi" and "the movie file downloaded had the following names and are briefly described: a)[Loli Child Porn] (Loli Y) Babj 00(New) by Kidzilla.avi." (Docket No. 24 at 4).

[3] The government maintains that the very same movie was found on Mr. Schimley's computer, but it was labeled as ""(Hussyfan)(pthc)(r@ygold)(babyshivid)Babyj Child abuse dark secret~Very willing premature sexualized little girls 3yo to 7yo shamed in pedofamilies.avi."

4

> the trooper enters a search term into Phex, the search results will typically reveal tens or hundreds of Phex users sharing a file containing the search term.  The list would include multiple users sharing the same file, although the file may be saved under a different file name.  If the search results include a file with the same name or hash value as a file stored in the text file, then the name from the trooper's text file will be assigned to the image he selects for download.

(Docket No. 24 at 4-5).  Thus, according to the government, when the trooper downloaded the suspect file from Mr. Schimley's IP address, that file was cross-referenced against his text file, either by file name or hash value, and assigned a name as specified in the text file.  (Docket No. 24 at 4-5).

In his motion to suppress, Mr. Schimley argued that he was entitled to a Franks hearing because the file referenced in the affidavit was not found on his hard drive. (Docket No. 23 at 8).  Mr. Schimley contended that pursuant to Franks, once every reference to the erroneously named file was excised from the affidavit, the warrant was rendered without probable cause.  (Docket No. 23 at 9-11).

*The Court's 25 September 2009 Denial of Mr. Schimley's Motion to Suppress*

In considering Mr. Schimley's arguments the Court used the following two-part test: (1) the defendant must make a substantial preliminary showing that the warrant affidavit contained false statements that were made "knowingly and intentionally, or with reckless disregard for the truth," and (2) the challenged statements must be necessary to a finding of probable cause.  Franks v. Delaware, 438 U.S. 154, 155-56 (1978). Because the government had conceded that the affidavit contained a false statement, the Court was left to decide whether the false statement was made knowingly and

5

intentionally, or with reckless disregard for the truth, and whether the false statement was necessary to the finding of probable cause.  (Docket No. 29 at 5-6).

The Court held that Mr. Schimley had not made a substantial showing that inclusion of false statement in the affidavit was intentional or reckless.  (Docket No. 29 at 9).  Mr. Schimley essentially contended that simply because the affidavit contained a false statement, Agent Russ' actions were necessarily intentional or reckless.  (Docket No. 29 at 9).  Unpersuaded, the Court held that Mr. Schimley did not meet his burden, because he presented no evidence, other than the existence of the falsehood, that Agent Russ or Trooper Erdely acted with knowledge, intent, or reckless disregard for the truth.  (Docket No. 29 at 9). The Court further reasoned that inclusion of the wrong file name was not material to the finding of probable cause, as it is simply a label which did not bear on Magistrate Judge Limbert's probable cause determination.  (Docket No. 29 at 10).

*Mr. Schimley's Motion for Reconsideration*

Mr. Schimley now asks the Court to reconsider this ruling on the grounds that new issues of fact had come to light with the filing of the government's opposition to Mr. Schimley's original motion.   (Docket No. 30 at 1).  First, Mr. Schimley argues that the Court should vacate its previous ruling and order a <u>Franks</u> hearing because, in coming to its conclusion that a hearing was unwarranted, the Court improperly relied on the government's unsubstantiated claim that the SHA-1 hash value of the downloaded file matched that of the file being shared at Mr. Schimley's IP address.  (Docket No. 30 at 7).  He maintains that review of the sufficiency of evidence supporting probable cause is

6

limited to information presented within the four corners of the affidavit, pursuant to Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560 (1971).  (Docket No. 30 at 7).  Therefore, he claims, the Court should not have considered the government's claim that the SHA-1 hash values matched, when it ruled that a Franks hearing was improper.

Second, Mr. Schimley argues that because Agent Russ omitted from the affidavit the fact that Trooper Erdely was using a so-called "rogue copy" or modified version of Phex, the Court should order a Franks hearing.  On this point, Mr. Schimley's expert Wayne Marney advances a variety of allegations as to the manner in which Trooper Erdely's use of the modified version of Phex fell below the standards of the forensic computer industry.  In sum, Mr. Marney concludes that the deficiencies of Trooper Erdely's methods prevent him from validating Trooper Erdely's investigation of Mr. Schimley.

**II. Standard of Review**

The Federal Rules do not describe motions to reconsider. The Sixth Circuit, however, has held that a motion to vacate and reconsider may be treated under Federal Rule of Civil Procedure 59(e) as a motion to alter or amend a judgment.  See Smith v. Hudson, 600 F.2d 60, 62 (6th Cir.1979)("[A] motion which asks a court to vacate and reconsider, or even to reverse its prior holding, may properly be treated under Rule 59(e) as a motion to alter or amend a judgment.").  Such a motion is extraordinary and is seldom granted because it contradicts notions of finality and repose.  Plaskon Elec. Materials, Inc. v. Allied-Signal, Inc., 904 F.Supp. 644, 669 (N.D .Ohio 1995).

A court may grant a motion to reconsider if a clear error of law or newly discovered evidence exists, an intervening change in controlling law occurs, or to prevent manifest injustice.  See Gencorp, Inc. v. Am. Int'l Underwriters, 178 F.3d 804, 834 (6th Cir.1999).  "It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.' "  McConocha v. Blue Cross & Blue Shield Mut. of Ohio, 930 F.Supp. 1182, 1184 (N.D.Ohio 1996)(quoting In re August 1993 Regular Grand Jury, 854 F.Supp. 1403, 1408 (S.D.Ind.1994)).

At the time Mr. Schimley filed the present motion, Federal Rule of Civil Procedure 59(e) required any motion to alter or amend a judgment be filed no later than ten days after the entry of judgment.  Although his motion was not timely, the Court will consider his arguments, both in the interest of justice and to the extent that he presents facts apparently unknown to him at the time he filed his original motion.

**III. Law and Analysis**

Under Franks, a defendant is entitled to an evidentiary hearing regarding the sufficiency of a warrant affidavit if he can satisfy a two-part test: (1) he must make a substantial preliminary showing that the warrant affidavit contained false statements that were made "knowingly and intentionally, or with reckless disregard for the truth," and (2) the challenged statements must be necessary to a finding of probable cause.  Franks v. Delaware, 438 U.S. 154, 155-56 (1978).  "Warrant affidavits carry with them 'a

presumption of validity,' and 'the challenger's attack must be more than conclusory' and must allege 'deliberate falsity or reckless disregard [on the part] of the affiant' " United States v. Stuart, 507 F.3d 391, 396 (6th Cir.2007) (quoting Franks, 438 U.S. at 171). If the defendant does not meet his burden to make a substantial preliminary showing, the presumption of validity with respect to the challenged affidavit is not overcome and a Franks hearing is not required. Id. at 171.

Material omissions from a warrant affidavit may be subject to inquiry under Franks. United States v. Atkin, 107 F.3d 1213, 1217 (6th Cir. 1997). However, an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information. Id. (citing United States v. Martin, 920 F.2d 393, 398 (6th Cir. 1990). Indeed, a Franks hearing is only merited in cases of omissions in "rare instances." Mays v. City of Dayton, 134 F.3d 809, 815 (6th Cir. 1998), cert. denied, 524 U.S. 942 (1998). This is so because an allegation of omission "'potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to the defendant's benefit.'" Id. (quoting United States v. Colkley, 899 F.2d 297, 301 (4th Cir. 1990)). As with affirmative misrepresentations, the burden is on the defendant to make a substantial preliminary showing that the affiant engaged in deliberate or reckless disregard for the truth by omitting critical information from the affidavit. United States v. Graham, 275 F.3d 490, 506 (6th Cir. 2001). Mere speculation and a desire to cross-examine does not amount to the requisite showing. See Franks, 438 U.S. at 171; United States v. Frazier, 423 F.3d 526, 539 (6th Cir. 2005).

9

In essence, a defendant will meet his burden when he can demonstrate that the affiant misrepresented the circumstances of the offense in such a way that empowered the magistrate judge to approve the warrant when he would not have been otherwise so empowered.  For instance, in United States v. Flake the court found that an officer acted recklessly when he admitted to having seen the defendant's criminal history yet cited to a purported previous conviction in the affidavit that was not actually part of the defendant's record.  United States v. Flake, 30 Fed. Appx. 736, 737-38 (9th Cir. 2002).  The inclusion of the false statement was material to the finding of probable cause, because the government often relies on experts who testify that a suspect's past actions demonstrate that he is a pedophile.  Id.

When defendants allege material omissions, courts consider how the omitted information might have defeated probable cause if it had been included, and look to whether recklessness or intent can be inferred from the facts.  For example, in United States v. Anderson, the defendant was charged with possession of child pornography, and motioned the court for a Franks hearing.  United States v. Anderson, 08-CR-261, 2009 WL 86487 (E.D. Wis. Jan. 12, 2009).  The warrant at issue was based on an affidavit alleging that the defendant had completed an online purchase of child pornographic images.  Id. at *2.  In fact, the officers had in their possession documents showing that the transaction was never completed for insufficient funds, but the officers omitted this from the affidavit.  Id.  The court charged the investigating officers with knowledge of this fact and found that a Franks hearing was warranted.  Id.

In Liston v. County of Riverside, the court engaged in a similar analysis.  In that case, probable cause to search a suspect's residence depended entirely on the strength

10

of the evidence that he was residing there.  Liston v. County of Riverside, 120 F.3d 965, 973-74 (9th Cir. 1997).  Officers applied for a search warrant of the home but failed to note in the affidavit that affixed to the "For Sale" sign in the front yard of the house was a "Sold" sign.  Id.  The court held that if the Magistrate Judge had been alerted to the existence of the signs, he would have been on notice that the suspect no longer resided there and that probable cause to search was questionable.  Id.  The court, therefore, held that a Franks hearing would have been proper.  Id. at 975.

### A. The Court's Purported Reliance on the Government's Claim of Matching SHA-1 Hash Values

Mr. Schimley first argues that the Court should vacate its previous ruling and order a Franks hearing because, in coming to the conclusion that a hearing was unwarranted, the Court improperly relied on the government's claim that the SHA-1 hash value of the downloaded file matched that of the file being shared at Mr. Schimley's IP address.  (Docket No. 30 at 6-7).  He states that under Supreme Court precedent, the Court may not rely upon information outside the four corner's of the affidavit in its probable cause determination.  Whiteley v. Warden, Wyoming State Penitentiary, 401 U.S. 560, 565 n.8 (1971).  (Docket No. 30 at 7).  He insists that whether the SHA-1 hash values truly match is an issue of fact that only a Franks hearing can resolve, and that the Court cannot simply rest on the Government's assertion that the files did in fact match.  (Docket No. 30 at 8).

The defendant is correct that the Court may not rely on "testimony concerning information possessed by the affiant when he sought the warrant but [which was] not

11

disclosed to the issuing magistrate." See Whiteley, 401 U.S. at 565, n.8.  However, the Court is not persuaded by Mr. Schimley's argument, because this is not a matter of the Court having blindly relied on the government's claim that the SHA-1 hash values in fact match, as the defendant suggests.  Contrary to the defendant's assertions, there was, and is, no burden on the government to disprove that Agent Russ acted intentionally or with reckless disregard for the truth by including false statements in the affidavit.  See Franks, 438 U.S. at 155-56.

The Court ruled the way it did, not because the government claimed that the SHA-1 hash values matched, but because the defendant was unable to meet his burden.  The Court looked to Mr. Schimley to show that the agent acted intentionally or with reckless disregard for the truth, by including material false information in the affidavit.  On this point, Mr. Schimley essentially argued that Agent Russ' actions were necessarily intentional or reckless simply because the affidavit contained false statements.  As the Court noted then, "Franks teaches that a mere showing of falsity is insufficient to demonstrate recklessness on the part of the affiant."  (Docket No. 27 at 9).  Because Mr. Schimley did not meet his burden, Court concluded, as it does now, that a Franks hearing is not warranted.

Furthermore, accepting for the sake of argument that Agent Russ' inclusion of the wrong file name was intentional or reckless, the Court again concludes that a Franks hearing is unwarranted, because the false statements were not material to Magistrate Judge Limbert's finding of probable cause.

Related to this issue are Mr. Schimley's intimations that a warrant of this kind is without probable cause when the affiant fails to specify matching SHA-1 hash values in

12

the affidavit.  (See Docket No. 8).  While he does not outright challenge the sufficiency of the warrant on its face, Mr. Schimley's argument seems to suggest that the warrant in this case would be supported by probable cause only if the agent had specifically described the matching SHA-1 hash values.  (Docket No. 8).

In reviewing the sufficiency of a warrant affidavit, the Court uses a "commonsense, rather than hypertechnical manner," and asks "whether the [Magistrate Judge] had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited."  United States v. Greene, 260 F.3d 471, 478-79 (6th Cir. 2001).  "Probable cause for the issuance of a search warrant is defined in terms of whether the affidavit sets out facts and circumstances which indicate a fair probability that evidence of a crime will be located on the premises of the proposed search."  United States v. Finch, 998 F.2d 349, 352 (6th Cir. 1993).  The "[Magistrate Judge's] determination of probable cause is afforded great deference," and should only be reversed if arbitrarily made.  United States v. Greene, 250 F.3d 471, 478 (6th Cir.2001)

This commonsense approach forecloses any notion of a constitutional mandate that a warrant affidavit like the one at issue specify the relevant SHA-1 hash values.  Furthermore, while Agent Russ did not specify the actual SHA-1 hash values, he did attest that Trooper Erdely had taken steps to ensure that the values did in fact match.  (Docket No. 23-2, ¶24).  Mr. Schimley has not otherwise met his burden that the warrant was insufficient, and it is clear that Agent Russ set out circumstances indicating a fair probability that evidence of a crime would be located at Mr. Schimley's residence.

**B. Omission of Trooper Erdely's Modifications to Phex**

Next, Mr. Schimley argues that Agent Russ deliberately or recklessly omitted from the affidavit the fact that Trooper Erdely used of a modified version or "rogue copy" of the Phex program as part of his investigation. (Docket No. 30 at 9-10). According to the defendant's expert, it is evident that Trooper Erdely was not using a standard version of the Phex program because this software does not typically rename files in the way the government has explained it. (Docket No. 30 at 9; Docket 30-1, ¶8). According to Mr. Marney, the modifications to the Phex program make validation of the investigation impossible. (Docket No. 30 at 11; Docket 30-1, ¶9). Mr. Schimley therefore argues that a Franks hearing is required so that he may "question Trooper Erdely's findings and methodology by means of an evidentiary hearing, in which Trooper Erdely's accuracy can be tested through cross-examination." (Docket No. 30 at 9-11).

Mr. Schimley's arguments on this point are not persuasive. The Court will not call a Franks hearing to provide the defendant with the opportunity to cross-examine simply on a hunch that he may uncover an intentional or reckless act on the part of the government. See Franks, 438 U.S. at 171; United States v. Frazier, 423 F.3d 526, 539 (6th Cir. 2005). "[E]xcept in the *very* rare cases where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts." Mays v. City of Dayton, 134 F.3d 809, 816 (6th Cir. 1998)(emphasis in original). While Mr. Schimley is correct that the affidavit does not mention Trooper Erdely's modifications to the Phex program,

14

he does not explain how this omission might have misled the Magistrate Judge or otherwise run afoul of the Fourth Amendment.

The facts of this case do not resemble those of the cases discussed above, in that Agent Russ's failure to reference Trooper Erdely's modifications to Phex does not reflect an attempt to mislead the magistrate judge. Unlike the officers in Flake and Liston, Agent Russ was not withholding information that might have cast doubt on the existence of probable cause. Mr. Schimley does not explain how the modifications might function as exculpatory information, and he presents no argument that had Agent Russ disclosed the details as to Trooper Erdely's modifications and methods, Magistrate Judge Limbert would have refused to issue the warrant.

Furthermore, it may be that Trooper Erdely's use of the modified software did not adhere to forensic computer industry standards, but this fact does not amount to an "intention to mislead" the Magistrate Judge. The shortcomings of Trooper Erdely's methods appear to "reflect mere inadvertance or negligence, rather than the reckless falsehood that is required for exclusion." United States v. Elkins, 300 F.3d 638, 649-50 (6th Cir. 2002)(citing United States v. Searcy, 181 F.3d 975, 980 (8th Cir. 1999). Mr. Schimley has given the Court no reason to think otherwise.

Finally, Mr. Schimley's vague allegation that validation of the investigation is impossible does not amount to a substantial showing of a deliberate or reckless omission. Mr. Schimley makes no specific allegations as to what difficulties he has encountered in attempting to validate the investigation, and the Court is left to simply imagine how Agent Russ' or Trooper Erdely's omissions might have been done intentionally or with reckless disregard for the truth.

**IV. Conclusion**

The Court is unpersuaded by Mr. Schimley's argument that it improperly relied on the government's claim that the SHA-1 hash values matched, when it denied the defendant's motion for a Franks hearing.  Furthermore, Mr. Schimley has not made a substantial showing that Agent Russ or Trooper Erdely acted intentionally or with reckless disregard for the truth by omitting reference to modifications to the Phex program.  Nor has Mr. Schimley met his burden to show that these omissions were material to the finding of probable cause.  For all the foregoing reasons, Mr. Schimley's motion to reconsider the Court's 25 September 2009 order is denied.

IT IS SO ORDERED.

    /s/ Lesley Wells
UNITED STATES DISTRICT JUDGE

Date: 21 December 2009